IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID J. GOODWILL,

        Plaintiff,

v.

BB&T INVESTMENT SERVICES, INC.,

        Defendant.

1:13-cv-1119-WSD

**OPINION AND ORDER**

This matter is before the Court on Defendant BB&T Investment Services, Inc. ("BB&T")'s Motion to Dismiss [4].

**I.   BACKGROUND**

    A.   <u>Procedural History</u>

On January 29, 2013, Plaintiff David J. Goodwill ("Plaintiff" or "Goodwill") filed this action in the State Court of Gwinnett County, Georgia, asserting against BB&T claims for breach of contract, breach of fiduciary duty and confidential relationship, bad-faith litigation, and punitive damages. On April 5, 2013, BB&T timely removed the action to this Court. On April 12, 2013, BB&T moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted.

    B.    <u>Facts</u>

Goodwill alleges that Lee Yi ("Yi"), at BB&T, served as Goodwill's financial advisor. As a BB&T investment customer, Goodwill sought, relied upon, and paid for financial investment advice from Yi and BB&T. Plaintiff asserts that his "relationship" with BB&T "was memorialized in multiple written documents between the parties." He does not identify these documents, specify any of their terms, or characterize their nature. He does allege the existence of a "Client Profile," which he attached as an exhibit to the Complaint. Goodwill notes that the Client Profile specifically refers to a "customer agreement," although that is not provided and its terms are not specified.

The basis of Goodwill's Complaint is an investment product offered by Sun Life Financial Services Company, Inc. ("Sun Life"). The product was a Sun Life Master's Flex/Variable Annuity (the "Annuity"). The Annuity was purchased for $400,000 on September 26, 2007. Goodwill claims that Jason Jackson ("Jackson"), a Sun Life sales representative, referred to the Annuity as a "CD on steroids" which would provide guaranteed annual income of 5% over its ten-year term. (Compl. ¶ 10.) Goodwill's understanding of the Annuity and its characteristics were confirmed by Jackson in a phone call and Goodwill claims he

2

ultimately was led by Jackson and Yi to believe that the initial $400,000 investment was guaranteed not to lose value, provided Goodwill did not close the account before ten years elapsed.[1]

Goodwill purchased the Annuity by signing an "application" and tendering a check for $400,000. The "application" was attached to the Complaint. He was given a "Certification of Specifications" document, which Goodwill also attached to the Complaint. Other written documentation about the Annuity was sent to Goodwill directly from Sun Life. These materials include brochures describing the Annuity and the written material provided by Sun Life, which Goodwill claims were misleading and which Sun Life (rather than BB&T) breached.

In July 2008, Goodwill received from Sun Life a quarterly statement that indicated a principal reduction based on market losses and, accordingly, a lower income benefit. Goodwill contacted Yi about the discrepancy between the quarterly statement and Goodwill's understanding of the terms of the Annuity. Yi contacted Jackson and Yi later told Goodwill that Jackson had misrepresented the product to Yi. Goodwill alleges that Jim Powell, a Sun Life Regional Vice-President met with Goodwill and Yi, and admitted that Goodwill had been

---

[1] Goodwill alleges that the Annuity terms permitted withdrawals of up to 10% each year without penalty but that the value of the fund, and the income it produced, would be accordingly reduced. (Compl. ¶ 16.)

misled.[2]  (Compl. ¶ 26; Pff.'s Br. in Resp. at 6.)  Goodwill alleges that "in recognition of this misrepresentation, Sun Life agreed to reset the [Annuity income base] to $380,000 but refused to honor the guaranteed $400,000."  (Compl. ¶ 28.)

Goodwill brought this action against BB&T based on the alleged misrepresentations made about the Annuity.  Goodwill alleges that BB&T made "false and material misrepresentations" regarding the terms of the Investment, and therefore breached the "customer agreement" into which Goodwill and BB&T entered.[3]  (Compl. ¶ 32.)  BB&T moves to dismiss, arguing that Goodwill has not identified a written agreement that BB&T is alleged to have breached.[4]  BB&T further argues that Goodwill's claim for breach of fiduciary duty is barred by the

---

[2] Plaintiff submitted an affidavit from Yi describing various representations Yi made.  The Court does not consider this affidavit or other extrinsic evidence on a motion to dismiss.

[3] This action is the second lawsuit Goodwill has filed against BB&T based on these facts.  On April 26, 2011, Goodwill filed a complaint in the Rome division of our court asserting the same causes of action against BB&T, Sun Life, Yi, and Jackson.  See Goodwill v. BB&T Investment Services, Inc. et al., 4:11-cv-108-HLM (N.D. Ga. 2011).  Judge Murphy granted BB&T's motion to dismiss, finding that Goodwill had not pleaded the existence of a written contract between Goodwill and BB&T and that any oral agreement was barred by the statute of frauds.  Goodwill's claims in that action were dismissed without prejudice.

[4] The parties agree that Goodwill's breach of contract claim is required to be based on a written agreement because any verbal agreement between Goodwill and BB&T is not actionable under the statute of frauds.  See Goodwill v. BB&T Investment Services, Inc. et al., 4:11-cv-108-HLM (N.D. Ga. 2011).

4

statute of limitations.

## II. DISCUSSION

### A. Legal Standard on a Motion to Dismiss

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (dismissal appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action").

In considering a motion to dismiss, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010), cert. denied, 132 S. Ct. 245 (2011). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept

conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).

The complaint ultimately is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Mere "labels and conclusions" are insufficient.  Id. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully" or the "mere possibility of misconduct," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 678-79 (citing Twombly, 550 U.S. at 557).  The well-pled allegations in a complaint must "'nudge[] [a party's] claims across the line from conceivable to plausible.'"  Am. Dental, 605 F.3d at 1289 (quoting Twombly, 550 U.S. at 570).[5]

---

[5] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

B.  <u>Analysis</u>

1.  *Breach of fiduciary duty claim*

BB&T argues that the statute of limitations in Georgia for a breach of fiduciary duty claim is four years.  Plaintiff alleges that he discovered Yi's representations about the Annuity to be false in July 2008.  BB&T thus argues that Goodwill's fiduciary duty claim was required to be filed by July 2012.  The Court agrees.

Actions for injuries to personalty or damage to property are subject to a four-year statute of limitations.  O.C.G.A. §§ 9-3-31, 9-3-32.  It is undisputed that claims for negligence, misrepresentation, and fraud are subject to this four-year limitations period.  See <u>Nash v. Ohio Nat'l Life Ins. Co.</u>, 597 S.E.2d 512, 515 (Ga. Ct. App. 2004); <u>Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.</u>, 479 S.E.2d 727, 729 (Ga. 1997).  While there is no specific statute of limitations for actions for breach of fiduciary duty, courts in Georgia consistently apply the four-year limitations period in O.C.G.A. § 9-3-31 in actions in which a plaintiff alleges a misrepresentation or omission in connection with an investment or other contract.  <u>Hendry v. Wells</u>, 650 S.E.2d 338, 343 (Ga. Ct. App. 2007) (limited partners' claim for breach of fiduciary duty barred by four-year statute of limitations in O.C.G.A. § 9-3-31); <u>Bridge Capital Investors II v. Small</u>,

7

144 F. App'x 762, 763 (11th Cir. 2005) (claim for alleged fraudulent inducement subject to four-year limitation period in O.C.G.A. § 9-3-31). Goodwill alleges that misrepresentations were made to him regarding the nature and the terms of the Annuity. This claim, based on alleged misrepresentations by BB&T's representative, is subject to a four-year statute of limitations. Hendry, 650 S.E.2d at 343. See also In re Pac One, Inc., 1:06-cv-118-WSD (N.D. Ga. July 17, 2007). Plaintiff's claim for breach of fiduciary duty is barred by the statute of limitations, and it is required to be dismissed.

2. *Breach of contract claim*

Goodwill discusses, in his Complaint, the "Client Profile" that was prepared when he became BB&T's customer and he notes that the Client Profile refers to a "customer agreement" he had with BB&T. He attached the Client Profile to his Complaint but did not attach the "customer agreement."[6] The Complaint refers on

---

[6] The Client Profile was signed by Goodwill on February 2, 2006, and contains, *inter alia*, Goodwill's personal identifying information, a summary of his assets, and a statement of his investment objectives. Above Goodwill's signature is a statement that provides:
> I have received BB&T Corporation's Consumer Privacy Notice, and BB&T Investments Services, Inc.'s Business Continuity Plan.
> The information in this document is a true picture of my financial situation.
> I have received the Pre-Dispute Arbitration Agreement and customer agreement and agree to be bound by these agreements.
> I have received a Prospectus.

occasion to other "written documents" that "memorialized" Goodwill's relationship with BB&T but he does not describe the form, content, purpose or terms within these "documents" and does not discuss specifically or generally which of those served to form a contract between the parties, otherwise "memorialized" the relationship he had with BB&T, or evidenced the obligations of the parties to each other.  BB&T has provided its form "customer agreement" as an attachment to its Memorandum in Support of its Motion to Dismiss.[7]  Goodwill does not dispute that this is the "customer agreement" noted in his Client Profile nor does he assert that he entered into any other "customer agreement" with BB&T.[8]

Goodwill asserts, in Count I of his Complaint, his breach of contract claim. In it, Goodwill alleges:

> Defendant BB&T has breached its written customer agreement with Dr. Goodwill by failing to provide proper investment advice to Dr.

---

[7] The Court may consider documents referenced by a plaintiff in his complaint that are central to claim when the documents are not in dispute and the defendant attaches them to a motion to dismiss.  Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284-85 (11th Cir. 2007).

[8] A majority of the numbered paragraphs in the Complaint alleged conduct by Sun Life, representations made to Goodwill and asserting "breaches" by Sun Life, not BB&T.  (See Compl. ¶¶ 10, 11, 13, 14, 15, 17, 18, 19, 20, 24.)  In the paragraphs in which Goodwill claims representations were made to him, he does not identify whether the representation was made by Yi, Jackson, or both.

> Goodwill, by persuading him to purchase the Investment knowing his desire to engage in conservative investments, by making false and material representations to him regarding the product which in fact persuaded him to make the investment, by engaging in such other wrongful conduct as is described herein and by otherwise failing to act in the manner provided for and contemplated under the terms of their investment advisor/client contract and in fact in contradiction thereof.

(Compl. ¶ 32.)

BB&T argues, and Goodwill does not dispute, that the Client Profile does not contain any terms BB&T is alleged to have breached in its dealings with Goodwill.  Goodwill indentifies only one specific document that constitutes his agreement with BB&T.  That document is identified as the "written customer agreement" and it is the "written customer agreement" that he claims was breached by BB&T in the manner alleged in Paragraph 32 of the Complaint.  Goodwill alleges in Paragraph 32 that this conduct resulted in a failure by BB&T to "act in the manner provided for and contemplated under the terms of their investment advisor/client contract."  The only document which is referenced in that paragraph is the "customer agreement."

BB&T argues, and Goodwill does not dispute, that the "customer agreement" does not contain any term that BB&T is alleged to have breached in its dealings with Goodwill.  The Court agrees and finds that because Goodwill fails to oppose BB&T's arguments that Plaintiff does not allege a violation of the

customer agreement, Goodwill has abandoned any claim (assuming he asserted one) based on a breach of the customer agreement.

A plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendant violated to survive a motion to dismiss. Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) ("Because [plaintiff] cannot point to any contractual provision that [defendant] breached . . . [plaintiff] cannot state a claim for breach of contract based on these allegations.") (citing Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1327 (11th Cir. 2005)).  Goodwill admits he is unable to point to a specific contractual provision because he does not have a complete copy of the documents he says he was given by BB&T.

Thus, in opposing the Motion to Dismiss, Goodwill now advances a fall-back position that the Court should allow discovery so he may obtain documents in BB&T's possession that, he claims, once disclosed will allow him to determine and allege the nature of his claimed contractual relationship with BB&T.[9] Goodwill's discovery request is painted on a very blank canvas.  The discovery requested seeks unspecified documents so that Goodwill may determine those

---

[9] Goodwill apparently did not retain copies of the documents received from time to time from BB&T, other than those he attached to his Complaint.

which may bear upon the contractual relationship between the parties and whether any of them may have been breached.  Interestingly, and importantly, the Complaint does not identify in any way the writings Goodwill claims contain the terms of the BB&T agreement and does not even state the number of documents that may have "memorialized" Plaintiff's relationship with BB&T, from whom they were received, when he may have received them, or even whether they predated the conduct that Goodwill alleges in Paragraph 32 of his Complaint.

The Complaint here does not provide sufficient allegations of what constitutes the alleged contract between the parties, other than the "customer agreement" that Plaintiff acknowledges was not violated and is not the basis of his claim.  The question remains whether the Court ought to allow Goodwill to conduct general discovery of writings that BB&T may possess so that Goodwill may evaluate if one or more of them have, alone or together, in whole or in part, contains a contract provision that Goodwill may identify as having been breached.

Goodwill has not offered any authority to support that the Court should exercise its discretion to permit discovery to determine whether there is a basis for a breach of contract claim, where, as here, Goodwill is unable o provide even the most superficial of descriptions of the written materials he believes may support his claim.  The Court declines to order that this kind of 'claims determination'

discovery should be allowed.

The Court has determined that Goodwill does not rely on the "customer agreement" as the basis of his breach of contract claim.  The Court further has reviewed, under the standards of Twombly and Iqbal, whether Goodwill has sufficiently alleged that a contract exists and that its terms were breached such that Goodwill has stated a plausible breach of contract claim.  The Court finds he has not, and will not allow Goodwill to conduct discovery simply to find an unspecified document in BB&T's possession.

On the record here, the Court concludes that Goodwill has not asserted a plausible claim for breach of contract.  The Court will, however, allow Goodwill to file, on or before December 20, 2013, an Amended Complaint to allege sufficient facts to state the documents that are the basis for his breach of contract claim and to state the provisions that he alleges BB&T's conduct violated.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant BB&T Investment Services, Inc.'s Motion to Dismiss [4] is **GRANTED IN PART**.  Plaintiff's claim for breach of fiduciary duty is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff may file an Amended Complaint to provide additional allegations to support his claim for breach of contract.  No other claims may be alleged.  The Amended Complaint shall be filed on or before December 20, 2013, and Plaintiff also shall file a red-lined version of the Amended Complaint, clearly identifying the changes to the Complaint.  If an Amended Complaint is not filed on or before December 20, 2013, Plaintiff's breach of contract claim will be dismissed.

**SO ORDERED** this 4th day of December 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE